UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA STARR-CRIPE, | ) |
| | ) No. CV-04-354-MWL |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing with oral argument on June 17, 2005. (Ct. Rec. 9, 12.)  Attorney James T. Solan represents Plaintiff; Special Assistant United States Attorney David R. Johnson represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.)  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 12)

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT     1

and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 9).

Plaintiff protectively applied for Social Security Income and Disability Insurance Benefits on September 28, 2000, alleging an onset date of January 3, 2000. (Tr. 17; 75.) Benefits were denied as was reconsideration. A request for hearing was timely filed. Hearings were held August 29, 2000; December 17, 2002 and February 25, 2003. (Tr. 17.) On June 6, 2003, the Administrative Law Judge (hereinafter, "ALJ,") Richard Hines denied benefits. (Tr. 26.) The Appeals Council considered additional evidence and then denied review. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity during the period at issue. (Tr. 18.) Plaintiff suffers from the severe impairment of a closed fracture of the lower extremity with subsequent difficulty involving malunion deformities which required corrective osteotomy, an impairment meeting a Listed impairment for the closed period of January 3, 2000 through January 11, 2001 (Tr. 20; 25).( The ALJ's finding of disability for this closed period is not part of this appeal.) The ALJ found that plaintiff has been diagnosed with and treated for a depressive disorder, post-traumatic stress disorder ("PTSD"), dissociative disorder, and substance abuse. (Tr. 25.) The ALJ found that plaintiff's mental impairments cause at most moderate limitations for only superficial contact with the public and no concentrated and continuous interaction with co-workers. (Tr. 23.) The ALJ found that plaintiff retained the residual functional

capacity for medium work. (Tr. 22.) He determined that she could return to her past relevant work. (Tr. 26.) Alternatively, the ALJ found that there are a significant number of other jobs plaintiff can perform. (Id.) The ALJ found the Plaintiff was not disabled.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT    3

or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision to deny benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts that the ALJ erred when he weighed the medical evidence and assessed her credibility. (Ct. Rec. 10 at 10; 18; 22-23.) The Commissioner responds that the ALJ's findings should be affirmed because they are supported by substantial evidence and are free of legal error. (Ct. Rec. 13 at 8; 15.)

**ADMINISTRATIVE HEARING**

Plaintiff was 42 years old at the time of the decision. (Tr. 18.) She earned a GED. (Tr. 477.) Plaintiff has worked as a data entry clerk, an assembly mechanic, a gas station attendant, and an office assistant. (Tr. 515.)

Plaintiff lives alone. (Tr. 477.) Her activities included

traveling by bus from Spokane to Everett in the summer of 2002 to care for a grandchild for a month. (Tr. 22; 500.) She cooks, cleans, does crafts, walks to the store, and watches television.(Tr. 500; 485-87; 497.) A close friend testified that she goes camping with the plaintiff two or three times yearly. (Tr. 509.)

## ANALYSIS

### 1. Weighing the Medical Evidence

Plaintiff alleges that the ALJ erred by failing to credit the opinion of treating physician Pamela Ridgway, Ph.D. (Ct. Rec. 10 at 11.) At oral argument plaintiff conceded that the ALJ gave specific reasons for discrediting Dr. Ridgway's opinion but argued that the reasons are not convincing. The Commissioner asserted that the ALJ's rejection of some of the assessed limitations is supported by specific reasons based on substantial evidence in the record. The record includes evidence from other treating and examining physicians that plaintiff's mental impairments did not result in significant psychological difficulties when she followed her medication regime. (Ct. Rec. 13 at 9-10.) The ALJ relied on these physicians' opinions in addition to the testimony of the testifying medical expert.

For reasons unclear to the court, the parties and the ALJ refer to Dr. Ridgway as a treating physician. The record reveals that Dr. Ridgway performed two evaluations at the request of DSHS, on January 9, 2001 (Tr. 140); and on August 13, 2002 (Tr. 289). She performed a post-hearing evaluation on July 12, 2004 (Tr 449). Even applying, as the ALJ did, the higher deference owed to a treating

physician, the record supports the ALJ's evaluation of Dr. Ridgway's opinions.

Dr. Ridgway first evaluated the plaintiff on January 9, 2001. (Tr. 140.) She diagnosed a history of polysubstance abuse in sustained full remission, post-traumatic stress disorder, dissociative disorder, NOS, and rule out psychotic disorder, NOS. (Tr. 141.) Dr. Ridgway assessed marked limitations in the ability to perform routine tasks, and in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 142.) She noted that plaintiff recently resumed taking paxil after not taking it for a year because she lacked insurance and money. (Id.) Dr. Ridgway opined that mental health intervention would likely restore or substantially improve plaintiff's ability to work. (Tr. 143.)

Dr. Ridgway evaluated plaintiff a second time on August 13, 2002. (Tr. 289.) She opined that plaintiff's negative test results are often associated with a "a cry for help" or with an extremely negative self-evaluation. (Tr. 292.) Dr. Ridgway described plaintiff's results on the MCMI as "valid results that likely involve some elements of symptom exaggeration, "a cry for help," and/or acute emotional turmoil. (Tr. 293.) With respect to the MMPI-2, Dr. Ridgway again found that the results likely involve some symptom exaggeration and/or a cry for help. She opined that these results can be considered "likely valid." (Id.) Dr. Ridgway noted that much of the objective testing "was equivocally valid due to Becky's apparent over-endorsement of problem areas," but noted that her overall responses are quite consistent. (Tr. 295.) She assessed

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT      6

a GAF of 50 and gave a "quite guarded" prognosis. (Tr. 294-95.)

Dr. Ridgway's last evaluation is entitled to less weight because it was rendered July 12, 2004, well after the final hearing on December 17, 2002. (Tr. 449.) *See e.g., Weetman v. Sullivan*, 877 F. 2d 20, 23 (9th Cir. 1989). She notes that plaintiff admitted to relapsing twice since her previous evaluation (in August of 2002) by using marijuana. (Id.) Plaintiff said she had three dissociative episodes in the past year, each lasting 15 to 30 minutes. (Id.) Testing showed mild anxiety. (Tr. 450.) Dr. Ridgway assessed a GAF of 50-55 and opined that plaintiff was unlikely able to work at that time. (Id.)

The ALJ rejected the severity of limitations assessed by Dr. Ridgway because her testing showed over-endorsement of problem areas. (Tr. 19.) This is a specific and legitimate reason to reject a doctor's assessed limitations.

The ALJ noted that a treating doctor, Susi Mulvihill, M.D., found in April of 2001 that plaintiff did not exhibit or experience any significant psychological difficulties and needed only medication management. (Tr. 19, citing Tr. 159-161.) Similarly, on May 7, 2001, Dr. Mulivill reported that plaintiff was cooperative, had an appropriate affect, normal speech, logical and goal oriented thought processes, fair insight and judgment, average intellect, no manic symptoms, and no significant delusions. (Id.) Physician David Grubb, M.D., examined plaintiff on March 30, 2001. (Tr. 186.) He assessed a GAF of 65-75, indicating mild symptoms under plaintiff's present medication regimen. (Tr. 188.) Dr. Grubb opined it was not clear that plaintiff needed any psychiatric treatment beyond

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT    7

antidepressants. (Tr. 189.)

The ALJ appropriately discounted Dr. Ridgway's assessed severe limitations because they are inconsistent with the findings of other treating and examining physicians.

The ALJ also relied on the opinion of the testifying medical expert, Allen Bostwick, Ph.D., that plaintiff's symptoms were well controlled with medication, and that the assessments of severe and extreme mental health limitations were not supported by the record as a whole. (Tr. 21, relying on Tr. 473-74.) Dr. Bostwick in turn relied partly on the statements of Danielle Riggs, A.R.N.P., that plaintiff's symptoms are relatively well-controlled with psychotropic medication. (Tr. 474) (Bostwick); (Tr. 206-07; 275)(Riggs.)

The ALJ also found Dr. Ridgway's assessed severe limitations inconsistent with plaintiff's activities. (Tr. 22.) For example, Dr. Ridgway assessed marked social withdrawl and marked limitations in the ability to perform routine tasks (Tr. 141), yet Plaintiff testified that she traveled alone by Greyhound bus from Spokane to Everett to care for a grandchild for a month. (Tr. 22.)

When weighing the evidence in a disability proceeding, case law requires that the opinions of examining physicians, when uncontroverted, be rejected only on the basis of clear and convincing evidence. *Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1996). The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester,* at 831 citing *Pitzer v. Sullivan*, 908 F. 2d 502, 506 n. 4

(9th Cir. 1990). Cases have upheld rejection of an examining or treating physician's opinion based in part on the testimony of a nonexamining medical advisor, but those cases have also found reasons to reject the opinions of examining and treating physicians that were independent of the nonexamining doctor's opinion. *Lester*, at 831 citing *Magallanes v. Bowen*, 881 F. 2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F. 3d at 1043 (conflict with opinions of five nonexamining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F. 3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results.) Thus, case law requires not only an opinion from the consulting physician but also substantial evidence, independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F. 3d at 1039.

If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F. 3d 595, 600 (9th Cir. 1999).

Dr. Ridgways's opinions are contradicted by other treating and examining physicians, and are undermined by her own testing indicating over-endorsement of symptoms. Her assessed severe limitations are contradicted by the testifying medical expert who reviewed plaintiff's medical records. Dr. Ridgway's assessed severe

1  limitations are contradicted by plaintiff's activities indicating
2  social and independent functioning.
3      The trier of fact, not the reviewing court, must resolve
4  conflicts in medical testimony. *Andrews v. Shalala*, 53 F. 3d 1035,
5  1039 (9th Cir. 1995).  If the evidence is susceptible to more than one
6  rational interpretation, the court may not substitute its judgment
7  for that of the Commissioner. *Tackett v. Apfel*, 180 F. 3d 1094, 1097
8  (9th Cir. 1999); *Morgan v. Commissioner*, 169 F. 3d 595, 599 (9th Cir.
9  1999).  The ALJ gave specific and legitimate reasons, supported by
10 substantial evidence, for rejecting Dr. Ridgway's assessed severe
11 limitations.  Accordingly, the ALJ's opinion of the medical evidence
12 must be affirmed.

### 2. Determining Plaintiff's Credibility

14      Plaintiff claims that the ALJ erred by finding her less than
15 completely credible. (Ct. Rec. 10 at 18.) The Commissioner asserts
16 that the ALJ's determination is correct and his determination need
17 only be supported by substantial evidence because plaintiff's
18 repeated over-endorsing of symptoms amounts to malingering. (Ct. Rec.
19 13 at 15-16.) At oral argument the Commissioner conceded that
20 malingering as a term of art does not apply to plaintiff.
21      In *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) the
22 court noted that when the ALJ finds the claimant's testimony as to
23 the severity of pain and impairments is unreliable, the ALJ must make
24 a credibility determination with findings sufficiently specific to
25 permit the court to conclude the ALJ did not arbitrarily discredit
26 claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th
27 Cir. 1991) (en banc).  The ALJ may consider the following factors
28

when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick*, 157 F.3d at 722.

Dr. Ridgway's test results indicated that plaintiff over-endorsed her symptoms. (Tr. 292.) Dr. Bostwick opined that these responses rendered the tests invalid. (Tr. 474.) The ALJ properly considered the plaintiff's over-endorsement of symptoms when assessing her credibility.

The ALJ found that plaintiff's activities do not support a finding that she is severely impaired. He points to the trip that she took alone by Greyhound bus from Spokane to Everett to care for a grandchild for a month. He notes other similar trips and activities refute plaintiff's claim that she is too psychologically impaired by social withdrawal and fear of traveling alone to be able to work. (Tr. 22.) An example is the July 12, 2001, notation by Jennifer Beatty, M.A., that plaintiff visited her boyfriend in Louisiana and

"while there problems developed." (Tr. 185.) As a result plaintiff was there for an extra week and a half. (Id.) The ALJ observed that many of plaintiff's mental health records show that her treatment pertains largely to family and other interpersonal relationships and do not support a finding that plaintiff suffers from such extreme mental health limitations as described by Dr. Ridgway. (Tr. 20; citing Tr. 185 and others.)

It is interesting with respect to the alleged severity of symptoms that on March 26, 2001, plaintiff told her treatment provider that she wanted to be a computer programmer. (Tr. 165.) At that time plaintiff's thought processes were described as logical and goal oriented. (Tr. 166.) No delusional content was noted, and her judgment and impulse control "have improved." (Tr. 167.)

As noted, if the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F. 3f 595, 600 (9th Cir. 1999). Because substantial evidence supports the ALJ's finding that plaintiff is less than completely credible, his assessment must be affirmed.

## Conclusion

Having reviewed the record and the ALJ's conclusions, this Court finds that substantial evidence supports the ALJ's decision that plaintiff is capable of performing a wide range of medium work, including her past relevant work as a cashier, and was "not disabled" within the meaning of the Social Security Act.
Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 9) is **DENIED.**

2. Defendant's Motion for Summary Judgment (Ct. Rec. 12) is **GRANTED.**

3. Any application for attorney fees may be filed by separate Motion.

4. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file **CLOSED.**

**DATED** this 22nd day of June, 2005.

s/ Michael W. Leavitt

MICHAEL LEAVITT
UNITED STATES MAGISTRATE JUDGE